342 F.3d 96
 AMERICAN BOOKSELLERS FOUNDATION; American Civil Liberties Union of Vermont, Inc.; Association of American Publishers, Inc.; Freedom to Read Foundation; National Association of Recording Merchandisers; Northshire Information, Inc.; PSINET, Inc.; Recording Industry Association of America, Inc.; Sexual Health Network, Inc., Plaintiffs-Appellees,
v.
Howard DEAN, in his official capacity as Governor of the State of Vermont; William H. Sorrell, in his official capacity as Attorney General of the State of Vermont, Robert Simpson, Dan Davis, Keith W. Flynn, Dale O. Gray, James A. Hughes, Vincent Illuzzi, James D. McKnight, James P. Mongeon, Joel W. Page, John H. Quinn, George E. Rice, Robert L. Sand, Terry J. Trono, and William Finley Wright, in their official capacities as Vermont State's Attorneys, Defendants-Appellants.
 Docket No. 02-7785.
 United States Court of Appeals, Second Circuit.
 Argued: February 6, 2003.
 Decided: August 27, 2003.
 
 COPYRIGHT MATERIAL OMITTED Michael A. Bamberger, Sonnenschein Nath & Rosenthal (Nolan Burkhouse, Sarah Shelburne North, Law Offices of Charles Platto, Norwich, VT, David Putter, Montpelier, VT, Markus Brakhan, Burlington, VT, on the brief), New York, NY, for Plaintiffs-Appellees.
 Joseph Leon Winn, Assistant Attorney General, Vermont Office of Attorney General, Montpelier, VT, for Defendants-Appellants.
 Before: WALKER, Chief Judge, POOLER, Circuit Judge, and GLEESON, District Judge.*
 JOHN M. WALKER, JR., Chief Judge.
 
 
 1
 Plaintiffs Sexual Health Network, Inc. and American Civil Liberties Union of Vermont brought suit against Vermont's Governor, Attorney General and various State's Attorneys ("State Defendants" or "Appellants") to enjoin enforcement of 13 V.S.A. § 2802a on the basis that it violated the First Amendment right of free expression and the dormant Commerce Clause. The United States District Court for the District of Vermont (J. Garvan Murtha, District Judge) found that the statute violated both the First Amendment and the dormant Commerce Clause and enjoined defendants from enforcing the statute. We affirm the district court's finding that the statute would violate the First Amendment and the dormant Commerce Clause if applied to the plaintiffs but modify the injunction to enjoin only its applications to the plaintiffs' internet-related activity.
 
 BACKGROUND
 
 2
 The facts of this case are set forth in detail in American Booksellers Foundation for Free Expression v. Dean, 202 F.Supp.2d 300 (D.Vt.2002), familiarity with which is presumed. We summarize the relevant facts below.
 
 
 3
 Plaintiff Sexual Health Network, Inc. ("SHN") is a Delaware for-profit corporation whose principal place of business is in Connecticut. SHN's purpose is to provide access to sexuality-related information, especially for persons with disabilities, illnesses, and changes in their lifestyle. SHN's website is the primary vehicle by which SHN provides such information. The SHN website contains information on a range of sex-related topics including: sexual addiction, advice for making safe sex practices more erotic, guidelines on the safe practice of bondage sadomasochistic activities, and information on how those with disabilities can experience sexual pleasure. Approximately 25,000 different viewers visit the SHN website each month. SHN's website also coordinates interactive question and answer forums.
 
 
 4
 The American Civil Liberties Union of Vermont ("ACLU-VT") is an affiliate of the national ACLU. ACLU-VT maintains a website that links to the website of the national ACLU. Although ACLU-VT does not include sex-related materials on its own website, the national ACLU includes materials on topics such as birth control, safe sex practices, gay and lesbian rights, abortion, and sex education.
 
 
 5
 In 2000, Vermont Governor Howard Dean signed into law Act No. 124, "An Act Relating to Internet Crimes," which extended to internet communications 13 V.S.A. § 2802's prohibition against distributing to minors sexually explicit materials that are "harmful to minors." 2000 Vt. Acts & Resolves 124 § 7; 13 V.S.A. § 2802 (1998). On February 7, 2001, plaintiffs sought declaratory and injunctive relief from enforcement of the amended statute on the basis that it violated the First Amendment and the dormant Commerce Clause. In response, the Vermont General Assembly passed Act No. 41, which limited 13 V.S.A. § 2802 to dissemination of indecent material to a minor "in the presence of a minor" and created a new provision, 13 V.S.A. § 2802a, which prohibited dissemination to minors of indecent material that is "harmful to minors" when the dissemination occurs "outside the presence of the minor" but the disseminator has "actual knowledge" that the recipient is a minor. 2001 Vt. Acts & Resolves 41. Plaintiffs amended their complaint to allege First Amendment and dormant Commerce Clause violations with the enactment of amended § 2802 and the new § 2802a.
 
 
 6
 The district court found that the technology of the Internet has not changed substantially since the Supreme Court's decision in Reno v. American Civil Liberties Union, 521 U.S. 844, 849-53, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). In particular, it remains difficult for "publishers" who post information on the internet to limit website access to adult viewers or to viewers from certain states. Although technology exists that allows publishers to restrict website access by requiring credit card verification or registration with a commercial age-verification service, a significant number of adult web-users are unwilling or unable to use such verification systems. Such systems are not only an additional hassle, they also require that website visitors forgo the anonymity otherwise available on the internet. Additionally, adults who do not have a credit card are unable to access those sites that require credit card verification. Neither SHN nor ACLU-VT screen viewers through either a credit card system or an age-verification screening service. According to SHN, such age-verification systems would significantly decrease the number and frequency of visitors to its website.
 
 
 7
 The district court held that (1) SHN and ACLU-VT had standing to bring suit against Section 2802a because they faced a sufficiently credible fear of prosecution but lacked standing to challenge Section 2802; (2) Section 2802a violates the First Amendment because it burdens adult speech and is not narrowly tailored; and (3) Section 2802a violates the dormant Commerce Clause because it projects Vermont's regulation onto the rest of the nation and because the local benefits do not outweigh the burden on interstate commerce. Am. Booksellers, 202 F.Supp.2d at 302-03, 310-22. Finally, the district court found that the statute could not be severed and permanently enjoined defendants from enforcing it.
 
 DISCUSSION
 
 8
 The State Defendants challenge the district court's determination that plaintiffs have standing and that the statute violates the First Amendment and dormant Commerce Clause. Defendants also challenge the scope of the injunction. Appellants' argument with respect to the first three points rests on a narrow construction of Section 2802a. We therefore turn first to the proper construction of Section 2802a. We review the district court's factual findings for clear error and its legal determinations de novo. See Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir.2001).
 
 I. Scope of Section 2802a
 
 9
 The core prohibition of Section 2802a reads in pertinent part as follows:
 
 
 10
 No person may, with knowledge of its character and content, and with actual knowledge that the recipient is a minor, sell, lend, distribute or give away [pornographic material] which is harmful to minors.[1]
 
 
 11
 The district court interpreted the provision to apply to material posted on websites and to internet or email discussion groups. The State Defendants argue that this interpretation is incorrect and that Section 2802a only applies to "person-to-person" communication because it is only in these circumstances that the sender will have "actual knowledge" that the recipient is a minor. We disagree.
 
 
 12
 The terms of Section 2802a can be easily read to apply to material placed on a website or shared with an email or internet discussion group. When people post information onto a website available to the public, they "distribute" or "give away" the information. "Actual knowledge" that a recipient is a minor is possible not only in cases of two-person email correspondence but also when the disseminator of the material knows that there will be minors among the many people who visit the website or participate in the discussion group. Moreover, as the Supreme Court pointed out in Reno, a "heckler" might provide "knowledge" by announcing that a minor would be looking at the website or participating in the discussion group. 521 U.S. at 880, 117 S.Ct. 2329. Appellants point to no decisions of the Vermont Supreme Court that suggest to us that that court would construe the statute differently.
 
 II. Standing
 
 13
 Appellants argue that plaintiffs lack standing because the statute does not reach material posted on plaintiffs' websites. As we have discussed, we reject this narrow reading of the statute. Because there are no feasible means of preventing minors from accessing their websites or internet discussion groups without also significantly limiting communication to adults, see Reno, 521 U.S. at 855-57, 117 S.Ct. 2329, Section 2802a presents plaintiffs with the choice of risking prosecution or censoring the content of their sites. Plaintiffs have therefore met the threshold for establishing standing for a First Amendment claim by demonstrating "`an actual and well-founded fear that the law will be enforced against [them].'" Vt. Right to Life Comm. v. Sorrell, 221 F.3d 376, 382 (2d Cir.2000) (quoting Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)). The district court did not address whether plaintiffs also have standing to bring their Commerce Clause claims. The standard for non-First Amendment claims is slightly higher: A plaintiff must demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). In this case, the choice that the statute presents to plaintiffs — censor their communications or risk prosecution — plainly presents a "realistic danger" of "direct injury."
 
 III. First Amendment Right to Free Expression
 
 14
 The Constitution permits a state to impose restrictions on a minor's access to material considered harmful to minors even if the material is not obscene with respect to adults, see Ginsberg v. New York, 390 U.S. 629, 636-37, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); but such restrictions aimed at minors may not limit non-obscene expression among adults. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 252, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("[S]peech within the rights of adults to hear may not be silenced completely in an attempt to shield children from it."); Reno, 521 U.S. at 874, 117 S.Ct. 2329 (applying heightened scrutiny to Communications Decency Act which aimed to protect children from indecent material).
 
 
 15
 Vermont's primary argument, again, is that the statute only applies to transmissions such as email sent directly to a minor when the sender has "actual knowledge" that the recipient is a minor. If that were the case, it is possible that regulation of such two-person email correspondence would be constitutional. However, as we have discussed, Vermont did not pass such a narrow statute. Section 2802a, like the statute struck down by the Supreme Court in Reno, regulates websites and internet discussion groups. See 521 U.S. at 859-60, 117 S.Ct. 2329. Appellants have not challenged the district court's finding that the technology available to prevent minors from accessing websites and discussion groups has not developed significantly since the Supreme Court decided Reno and that the present technologies would deter many adults from visiting those sites. See Am. Booksellers, 202 F.Supp.2d at 307-08, 318; see also Reno, 521 U.S. at 855-57, 117 S.Ct. 2329.
 
 
 16
 We also agree with the district court that the legislative remedy is not narrowly tailored and that Vermont's goals could be substantially achieved through alternative means that would not burden adult expression. As the Reno Court found, the general interest in preventing minors from viewing pornographic material on the internet can be achieved through a variety of user-based internet filtering technologies that allow parents and teachers to oversee a minor's use of the internet. See Reno, 521 U.S. at 877, 117 S.Ct. 2329. In addition, Vermont's interest in preventing pedophiles from "grooming" minors for future sexual encounters can be effectively addressed through enforcement of Section 2828, which regulates electronic "luring." 13 V.S.A. § 2828. We therefore find that, as applied to plaintiffs' internet speech, Section 2802a burdens protected speech and is not narrowly tailored, and, like the Communications Decency Act struck down in Reno, violates the First Amendment. See id. at 879, 117 S.Ct. 2329.
 
 IV. Dormant Commerce Clause
 
 17
 The district court also held that Section 2802a violated the dormant Commerce Clause. We discuss this issue briefly.
 
 
 18
 The "dormant" Commerce Clause protects against state regulations that "erect barriers against interstate trade." Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 35, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980). Dormant Commerce Clause doctrine distinguishes between state regulations that "affirmatively discriminate" against interstate commerce and evenhanded regulations that "burden interstate transactions only incidentally." Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). Regulations that "clearly discriminate against interstate commerce [are] virtually invalid per se," Nat'l Elec. Mfr. Ass'n v. Sorrell, 272 F.3d 104, 108 (2d Cir.2001), while those that incidentally burden interstate commerce will be struck down only if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits," Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The Supreme Court has acknowledged, however, that "there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the Pike v. Bruce Church balancing approach." Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986); see also Healy v. Beer Inst., 491 U.S. 324, 337 n. 14, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989). In order to determine whether Section 2802a should be analyzed under the Pike balancing test or as a per se violation, we examine the nature of the burden on interstate commerce. Under either analysis, "the critical consideration is the overall effect of the statute on both local and interstate activity." Brown-Forman, 476 U.S. at 579, 106 S.Ct. 2080.
 
 
 19
 State regulations may burden interstate commerce "when a statute (i) shifts the costs of regulation onto other states, permitting in-state lawmakers to avoid the costs of their political decisions, (ii) has the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction, or (iii) alters the interstate flow of the goods in question, as distinct from the impact on companies trading in those goods." Brown & Williamson Tobacco Corp. v. Pataki, 320 F.3d 200, 208-09 (2d Cir.2003) (citations omitted); see also Pac. Northwest Venison Producers v. Smitch, 20 F.3d 1008, 1015 (9th Cir.1994) (reviewing types of burdens such as "disruption of travel and shipping due to lack of uniformity of state laws," "impacts on commerce beyond the borders of the defendant state," and "impacts that fall more heavily on out-of-state interests").
 
 
 20
 The district court considered separately whether, because of its extraterritorial effects, Section 2802a violates the dormant Commerce Clause and whether it fails the Pike balancing test because of the general burden it placed on interstate commerce. Am. Booksellers, 202 F.Supp.2d at 320-21. The district court found that because Section 2802a "regulates Internet commerce occurring wholly outside Vermont's borders," it violates the dormant Commerce Clause per se and, because the putative local benefits were relatively insignificant, it also fails the Pike balancing test. Id.
 
 
 21
 We start by considering the statute's extraterritorial effects. In Healy, the Court held that "a state law that has the `practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." 491 U.S. at 332, 109 S.Ct. 2491. Because the internet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities without "project[ing] its legislation into other States." Id. at 334, 109 S.Ct. 2491.
 
 
 22
 A person outside Vermont who posts information on a website or on an electronic discussion group cannot prevent people in Vermont from accessing the material. If someone in Connecticut posts material for the intended benefit of other people in Connecticut, that person must assume that someone from Vermont may also view the material. This means that those outside Vermont must comply with Section 2802a or risk prosecution by Vermont. Vermont has "project[ed]" section 2802a onto the rest of the nation.
 
 
 23
 Once again appellants defend Section 2802a by arguing that, under their narrow interpretation of the statute, it only regulates material sent directly to a minor in Vermont and does not regulate out-of-state internet activities or websites that are visited by Vermont minors. With our rejection of this narrow interpretation of Section 2802a, this argument fails. Although Vermont aims to protect only Vermont minors, the rest of the nation is forced to comply with its regulation or risk prosecution.
 
 
 24
 We do note, however, that the extraterritorial effects of internet regulations differ from extraterritorial-regulation cases like Healy and Brown-Forman. In Healy, for example, Connecticut sought to prevent distributors from selling beer in-state for more than the price at which they sold it in neighboring states. Healy, 491 U.S. at 326, 109 S.Ct. 2491. Connecticut accomplished this by setting the maximum price for which beer could be sold during the next month by reference to the minimum price in neighboring states. Once the maximum in-state price was set, the regulations had the effect of also fixing the minimum price at which beer or liquor could be sold in the neighboring states because the distributor would face penalties if it sold beer or liquor for less in the neighboring states. Id. at 338, 109 S.Ct. 2491. Thus, Connecticut's regulation was projected onto purely intrastate beer sales in the neighboring state. See also Brown-Forman, 476 U.S. at 575, 584, 106 S.Ct. 2080 (striking down a similar New York State regulation of liquor prices).
 
 
 25
 In contrast, the internet's boundary-less nature means that internet commerce does not quite "occur[] wholly outside [Vermont's] borders." Healy, 491 U.S. at 332, 109 S.Ct. 2491. Even if a website is never visited by people in Vermont, it is available to them in a way that a beer purchase in New York or Massachusetts is plainly not. Vermont's interest in out-of-state internet activity is thus more significant than a state's interest in the price of out-of-state beer sales. However, internet regulation of the sort at issue here still runs afoul of the dormant Commerce Clause because the Clause "protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." Id. at 337, 109 S.Ct. 2491. Thus, at the same time that the internet's geographic reach increases Vermont's interest in regulating out-of-state conduct, it makes state regulation impracticable. We think it likely that the internet will soon be seen as falling within the class of subjects that are protected from State regulation because they "imperatively demand[] a single uniform rule." Cooley v. Bd. of Wardens, 53 U.S. 299, 319, 12 How. 299, 13 L.Ed. 996 (1851).
 
 
 26
 Although Section 2802a does not discriminate against interstate commerce on its face, we agree with the district court that it presents a per se violation of the dormant Commerce Clause. In practical effect, Vermont "has `projected its legislation' into other States, and directly regulated commerce therein," in violation of the dormant Commerce Clause. Brown-Forman, 476 U.S. at 584, 106 S.Ct. 2080 (emphasis added). Because we find that, as applied to plaintiffs' internet speech, the statute violates the dormant Commerce Clause as a matter of law, we have no need to apply the Pike balancing test to the statute's extraterritoriality and decline to consider, as the district court did, whether the statute would also fail the Pike test based on the general burden it places on interstate commerce.
 
 
 27
 In finding that Section 2802a violates the First Amendment and the dormant Commerce Clause, we join the Tenth Circuit which concluded in American Civil Liberties Union v. Johnson that a similar New Mexico law violated both constitutional provisions. See Johnson, 194 F.3d 1149, 1158, 1162-63 (10th Cir.1999); see also Am. Libraries Ass'n v. Pataki, 969 F.Supp. 160, 179, 183-84 (S.D.N.Y.1997) (holding that a New York law prohibiting dissemination via computer of "harmful to minors" material to a minor violated the dormant Commerce Clause).
 
 V. Scope of the Injunction
 
 28
 Appellants request that the panel modify the injunction, which permanently enjoins them from enforcing Section 2802a, to apply only to internet communications. We agree with the district court that the terms of the statute do not permit us either to construe the statute narrowly or to sever the unconstitutional portion. However, we believe that because plaintiffs challenged the statute based on their own speech, it is preferable to determine the validity of the statute only as applied to that speech. As such, we agree with appellants that the injunction should be modified to enjoin them from enforcing the statute against the internet speech upon which plaintiffs base their suit.
 
 
 29
 In the context of the First Amendment, a party whose speech could be constitutionally regulated is permitted to challenge a statute based on its overbreadth, the fact that the statute regulates not only their unprotected speech but also a substantial amount of protected speech. See Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). When a court finds that a statute suffers from such substantial overbreadth, all enforcement of the statute is generally precluded. Although the district court did not directly analyze whether the statute was "substantially overbroad," the broad terms of the injunction suggest that the district court thought that it was substantially overbroad and thus invalid in all applications.
 
 
 30
 In this case, we do not need to determine whether the statute is substantially overbroad; we can simply determine whether the statute can be constitutionally applied to the internet speech upon which plaintiffs base their suit. As the Supreme Court held in Board of Trustees v. Fox, it is "generally [not] desirable [] to proceed to an overbreadth issue unnecessarily." 492 U.S. 469, 484-85, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Thus, "the lawfulness of the particular application of the law should ordinarily be decided first." Id. at 485, 109 S.Ct. 3028; see also Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) ("[W]here the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish ... [t]he statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact."). We therefore follow "the normal rule that partial, rather than facial, invalidation is the required course" and leave for another day an overbreadth challenge to the statute. Brockett, 472 U.S. at 504, 105 S.Ct. 2794.
 
 
 31
 We think the Supreme Court's decision in Reno is not inconsistent with this result. In Reno, the Court enjoined the Communications Decency Act completely, despite the fact that the plaintiffs in Reno based their suit on their own protected speech. However, the Reno Court explained that the statute which granted expedited review prevented the Court from converting the case into an as-applied challenge and also noted that the "vast array of plaintiffs, the range of their expressive activities, and the vagueness of the statute" made it impractical to consider an as-applied challenge. Reno, 521 U.S. at 883-84, 117 S.Ct. 2329. In the instant case, our jurisdiction is not similarly constrained and because the speech at issue is discrete, it is feasible to consider only the internet speech upon which plaintiffs based their suit.
 
 
 32
 We therefore order that the injunction be modified to enjoin defendants from enforcing Section 2802a only as applied to the kind of internet speech presented by plaintiffs.
 
 
 33
 To recap, we agree with the district court that plaintiffs SHN and ACLU-VT have standing to challenge Section 2802a. Considering the statute as applied to plaintiffs' internet speech, we find that Section 2802a violates the First Amendment because it burdens protected communications and is not narrowly tailored, and violates the dormant Commerce Clause as a matter of law because it projects Vermont's regulatory regime onto the rest of the nation. Finally, we enjoin enforcement of Section 2802a only as applied to the internet speech upon which plaintiffs based their suit and direct the district court to modify the injunction accordingly.
 
 CONCLUSION
 
 34
 Affirmed in part and modified in part.
 
 
 
 Notes:
 
 
 *
 The Honorable John Gleeson, of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The entirety of 13 V.S.A. § 2802a reads as follows:
 Disseminating indecent material to a minor outside the presence of the minor
 (a) No person may, with knowledge of its character and content, and with actual knowledge that the recipient is a minor, sell, lend, distribute or give away:
 (1) any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image, including any such representation or image which is communicated, transmitted, or stored electronically, of a person or portion of the human body which depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors; or
 (2) any book pamphlet, magazine, printed matter, however reproduced, or sound recording which contains any matter enumerated in subdivision (1) of this subsection, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors.
 (b) No person may, with actual knowledge that the recipient or viewer is a minor, and with knowledge of the character and content of a motion picture, show or other presentation, including any such motion picture, show or presentation which is communicated, transmitted, or stored electronically, which, in whole or in part, depicts nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors:
 (1) exhibit such a motion picture, show or other presentation to a minor; or
 (2) sell or give away to a minor an admission ticket or pass to premises whereon there is exhibited or to be exhibited such a motion picture, show or other presentation.
 (c) This section shall apply to acts occurring outside the presence of the minor.
 "Harmful to minors" is defined by 13 V.S.A. § 2801(6) as material that:
 (A) Predominantly appeals to the prurient, shameful or morbid interest of minors; and
 (B) Is patently offensive to prevailing standards in the adult community in the state of Vermont as a whole with respect to what is suitable material for minors; and
 (C) [][T]aken as a whole, lacks serious literary, artistic, political, or scientific value, for minors.