20-1044-cv
*Grand River Enterprises v. Boughton*

# United States Court of Appeals
## for the Second Circuit

———————————

AUGUST TERM 2020

ARGUED: OCTOBER 15, 2020        DECIDED: FEBRUARY 8, 2021

NO. 20-1044-CV
————————————

GRAND RIVER ENTERPRISES SIX NATIONS, LTD.,
*Plaintiff-Appellant*,

– v. –

MARK BOUGHTON, COMMISSIONER, CONNECTICUT DEPARTMENT OF
REVENUE SERVICES,
*Defendant-Appellee*.[*]

BEFORE:
LOHIER, WALKER, *Circuit Judges,* and STANCEU, *Judge.*[**]

———————————

[*] The Clerk of Court is directed to amend the caption as set forth above.

[**] Chief Judge Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

Plaintiff-Appellant Grand River Enterprises Six Nations, Ltd. ("Grand River" or "GRE") appeals from a September 27, 2018 judgment of the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*) dismissing its action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted and a March 3, 2019 judgment (Jeffrey A. Meyer, *Judge*) denying its motion for reconsideration.

Grand River, a Canadian cigarette manufacturer, sued Defendant-Appellee Mark Boughton, the Commissioner of the Connecticut Department of Revenue Services ("DRS"), raising constitutional challenges to a Connecticut statute (the "Reconciliation Requirement," Conn. Gen. Stat. § 4-28m(a)(3)) that imposes certain reporting requirements upon Grand River as a prerequisite to the sale of GRE's cigarette brands in Connecticut. Grand River claimed the Reconciliation Requirement violates its due process rights and the Supremacy and Commerce Clauses of the United States Constitution.

We agree with the District Court that Grand River's Second Amended Complaint fails to state a claim upon which relief can be granted and, accordingly, **AFFIRM** the judgments of the District Court.

_____

ERICK M. SANDLER, Day Pitney LLP, Hartford, CT (Stanley A. Twardy, Jr., Day Pitney LLP, Stamford, CT and Matthew J. Letten, Day Pitney LLP, Hartford, CT, *on the brief*), *for Plaintiff-Appellant*.

HEATHER J. WILSON, Assistant Attorney General, Hartford, CT (Joseph J. Chambers, Assistant Attorney General, *on the brief*), *for Defendant-Appellee*.

_____

STANCEU, *Judge*:

The majority of cigarettes sold in the United States are produced by manufacturers that have entered into a "Master Settlement Agreement" ("Agreement") with a coalition of state attorneys general. Manufacturers that participate in the Agreement ("Participating

3

Manufacturers") are subject to various requirements, including restrictions on their advertising practices and the obligation to make certain payments to state governments to offset harms caused by smoking. To preserve a level playing field, the Agreement incentivizes states that have signed the Agreement to impose by statute a slate of restrictions and obligations on manufacturers that choose not to participate ("Nonparticipating Manufacturers").

Connecticut, a signatory to the Agreement, imposes upon Nonparticipating Manufacturers a reporting requirement known as the "Reconciliation Requirement." Described in brief summary, the Reconciliation Requirement directs each Nonparticipating Manufacturer to report annually to Connecticut's Department of Revenue Services its total nation-wide sales of cigarettes on which federal excise tax is paid, its total interstate cigarette sales, and its total intrastate cigarette sales. The Reconciliation Requirement is met if the total nation-wide sales of a manufacturer's cigarettes do not exceed the sum

4

of the interstate and intrastate sales by more than 2.5%. If this threshold is exceeded, the manufacturer must explain to the State's satisfaction the reason for the discrepancy in order for its cigarette brands to be sold within the State.

Grand River, a Nonparticipating Manufacturer, brought an action in the District Court raising constitutional challenges to the Reconciliation Requirement, claiming it abridges GRE's rights under the Fourteenth Amendment Due Process Clause of the U.S. Constitution (and also under the Connecticut State Constitution) for lack of a rational justification and also is in violation of the Commerce and Supremacy Clauses of the U.S. Constitution. Concluding to the contrary, we hold that the Reconciliation Requirement has a rational relationship to the State's legitimate interests in collecting excise taxes and combatting cigarette smuggling that satisfies both federal and state due process requirements. We hold, further, that Connecticut has violated neither the Commerce Clause nor the Supremacy Clause by

imposing the Reconciliation Requirement on a Nonparticipating Manufacturer as a condition of permitting that manufacturer's brands to be sold within the State. For these reasons, we **AFFIRM** the judgments of the District Court.

## I. BACKGROUND

### A. The Master Settlement Agreement

In November 1998, four of the largest tobacco manufacturers in the United States and the attorneys general of forty-six states,[1] five territories, and the District of Columbia executed the Master Settlement Agreement, which sought to supplant further state lawsuits against tobacco advertising practices and to require tobacco manufacturers to pay damages to compensate states for healthcare costs resulting from smoking-related conditions. Beyond the four original signatory manufacturers, other tobacco manufacturers since

---

[1] Four states, Florida, Minnesota, Mississippi, and Texas, had reached individual state-level agreements with tobacco manufacturers prior to the Master Settlement Agreement.

have signed the Agreement, and as a result the vast majority of cigarette sales in this country are of brands owned by Participating Manufacturers.

Participating Manufacturers agreed, *inter alia*, to restrict advertising and sponsorships, to dissolve three tobacco-related trade organizations, and to accept restrictions on lobbying and trade association activities. They also agreed to fund a youth smoking prevention organization and to make payments to the settling states in perpetuity, in amounts determined by each manufacturer's market share (with a system for adjusting these payments based on future sales).

To ensure that Nonparticipating Manufacturers do not gain a competitive advantage over Participating Manufacturers, the Agreement incentivizes signatory states such as Connecticut to impose by statute certain obligations on Nonparticipating Manufacturers. Among other things, signatory states require Nonparticipating

7

Manufacturers to deposit into escrow certain amounts, based on sales figures, to satisfy potential claims for damages resulting from cigarette smoking, as a parallel to the market share payment obligations to which the Participating Manufacturers agreed to be bound. *See* Master Settlement Agreement § IX(d)(2)(B). Some states also impose additional requirements, such as the Reconciliation Requirement at issue here.

### B. The Reconciliation Requirement

In Connecticut, tobacco manufacturers may not sell cigarettes in the State unless their cigarette brands are listed in a "Directory" published by the DRS. Conn. Gen. Stat. § 4-28m. To be included in the Directory, a Participating Manufacturer must be "generally perform[ing] its financial obligations under the Master Settlement Agreement." *Id.* § 4-28i(a)(1)(A). In contrast, a Nonparticipating Manufacturer must satisfy the escrow payments described above and comply with additional statutory requirements, including the Reconciliation Requirement. *Id.* § 4-28l(a), (d).

The Reconciliation Requirement provides in pertinent part as follows:

> The commissioner shall not include or retain in the directory any brand family of a nonparticipating manufacturer if the commissioner concludes . . . a nonparticipating manufacturer's total nation-wide reported sales of cigarettes on which federal excise tax is paid exceeds the sum of (i) its total interstate sales, as reported under 15 USC 375 et seq., as from time to time amended, or those made by its importer, and (ii) its total intrastate sales, by more than two and one-half per cent of its total nation-wide sales during any calendar year, unless the nonparticipating manufacturer cures or satisfactorily explains the discrepancy not later than ten days after receiving notice of the discrepancy.

*Id.* § 4-28m(a)(3). Connecticut asserts that the purpose of the Reconciliation Requirement is to prevent Nonparticipating Manufacturers from diverting cigarettes into an illicit market that harms Connecticut residents and reduces the State's ability to collect taxes and escrow payments.

9

*C. The Proceedings in the District Court*

On June 29, 2016, Grand River commenced an action in the District of Connecticut against the Acting Commissioner of the DRS ("Commissioner") to challenge the Reconciliation Requirement. GRE amended its complaint on December 1, 2016. On February 17, 2017, the Commissioner filed a motion to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). On July 5, 2017, the District Court denied this first motion to dismiss. After Grand River filed a second amended complaint on September 5, 2017, the Commissioner, on November 17, 2017, again moved to dismiss under Rule 12(b)(6). On September 26, 2018, the District Court granted this motion, holding that the Reconciliation Requirement does not violate the Due Process, Supremacy, or Commerce Clauses. The District Court also denied Grand River's claim for a declaratory judgment that it is in compliance with the Reconciliation Requirement. The District Court entered judgment on September 27, 2018. On October 3, 2018, GRE moved for

10

reconsideration of the dismissal of its claims under the Commerce Clause and the Supremacy Clause in the District Court, a motion the District Court denied on March 3, 2020. This appeal followed.

## II. DISCUSSION

We exercise appellate jurisdiction according to 28 U.S.C. § 1291. We review *de novo* the granting of a motion to dismiss, accepting all factual allegations in the Amended Complaint as true and drawing all inferences in favor of the nonmoving party. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Grand River argues on appeal that the District Court erred in holding that the Reconciliation Requirement does not violate substantive due process and is not prohibited by the Commerce or

11

Supremacy Clauses of the U.S. Constitution.[2] In the alternative, Grand River argues that the District Court erred in denying relief on its claim for a declaratory judgment that GRE is in compliance with the Reconciliation Requirement. The Commissioner disputes Grand River's arguments and further asserts that GRE lacks standing to pursue this appeal. We address each of these arguments below.

*A. Article III Standing*

The Commissioner argues that we should dismiss this appeal for lack of Article III standing, arguing that Grand River, being currently listed in the Directory, suffers no injury in fact. While Grand River's second amended complaint alleges that it has incurred

---

[2] GRE also argues that the District Court erred in holding that the Reconciliation Requirement does not violate substantive due process under the Connecticut Constitution. The requirements to state a violation of substantive due process under the Connecticut Constitution are the same as the requirements under the U.S. Constitution, so we analyze both claims under the same framework. *See Ramos v. Town of Vernon*, 254 Conn. 799, 837, 761 A.2d 705, 727 (2000) (noting the coextensive nature of state and federal due process protections while holding open the option to expand the Connecticut Constitution's due process rights in the future).

substantial costs to comply with the Reconciliation Requirement, the Commissioner asserts that Grand River has failed to plead these costs with sufficient particularity to meet its burden. We disagree with the Commissioner and conclude that Grand River has adequately pleaded an injury in fact sufficient to confer Article III standing.

The constitutional minimum of Article III standing is well established. To meet its burden, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The Supreme Court has instructed that an "injury in fact" is an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). When "a plaintiff is

himself an object of the action (or foregone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561–62.

A regulated entity may plead an "injury in fact" by plausibly alleging compliance costs associated with an increased regulatory burden. The Third Circuit has referred to economic injury in the form of "compliance costs" as "a classic injury-in-fact," *Am. Farm Bureau Fed'n v. EPA*, 792 F.3d 281, 293 (3d Cir. 2015), and the Fifth Circuit has held that "[a]n increased regulatory burden typically satisfies the injury in fact requirement," *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015). The D.C. Circuit, as well, has applied *Lujan* to confer Article III standing on directly regulated entities that "must incur costs to ensure that they are properly complying with the terms" of a new regulatory regime. *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015)

14

(Kavanaugh, J.). Although we have addressed this issue only in passing, *see Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86 (2d Cir. 2009), the decisions of our sister circuits reflect a nearly uniform approach with which we agree. *See, e.g., City of Kennett v. EPA*, 887 F.3d 424, 431 (8th Cir. 2018); *Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir. 2009).

Applying these standards, we have little difficulty concluding that Grand River has standing to pursue its claims. As a Nonparticipating Manufacturer, Grand River is the object of Connecticut's Reconciliation Requirement. It alleges that it "has expended over $300,000 in seeking and obtaining approval to be listed on the Tobacco Directory, and has invested a similar amount in regulatory and compliance fees and payments since obtaining such approval." Second Am. Compl. ¶ 9; *see also id.* ¶¶ 35, 36. Because at the pleading stage we "presum[e] that general allegations embrace

15

those specific facts that are necessary to support the claim," we reasonably infer that some of these costs were incurred to comply with the Reconciliation Requirement and that Grand River's compliance costs will continue so long as it remains subject to the regulation. *John*, 858 F.3d at 737 (alteration in original) (quoting *Lujan*, 504 U.S. at 561). These allegations suffice to plead an injury in fact that is fairly traceable to the Commission's enforcement of the Reconciliation Requirement and would be redressed by a favorable judicial decision.

B.  *Substantive Due Process*

Grand River claims that the Reconciliation Requirement violates the substantive guarantees of the Due Process Clause, U.S. CONST. amend. XIV, § 1.  On appeal, GRE argues, first, that it has a protected interest in maintaining its current listing in the Directory and, second, that the Reconciliation Requirement is arbitrary and irrational and thereby fails the rational basis test.  In considering this issue, we assume (as did the District Court), without deciding, that Grand River

has a constitutionally protected interest in maintaining its listing in the Directory, which is necessary for it to continue to market cigarettes in Connecticut. We proceed to consider, therefore, whether the Reconciliation Requirement is "rationally related to a legitimate state interest." *Lange-Kessler v. Dep't of Educ.*, 109 F.3d 137, 140 (2d Cir. 1997).

It scarcely can be argued that Connecticut lacks a legitimate state interest in preventing smuggling and tax evasion that affects, or potentially affects, the distribution within its borders of cigarettes, an extensively taxed product with adverse health effects. The inquiry relevant to GRE's substantive due process claim is, therefore, whether the Reconciliation Requirement is rationally related to that state interest. Grand River offers three arguments to challenge that conclusion: (1) that the Reconciliation Requirement is arbitrary in affecting only Nonparticipating Manufacturers, (2) that it also is arbitrary in pursuing a national accounting of sales while

17

Connecticut's interest is limited to preventing illicit sales within the State, and (3) that no evidence proves the Reconciliation Requirement in fact reduces cigarette smuggling.

The logic of the Reconciliation Requirement is apparent from the types of reporting it seeks. Federal excise taxes are paid when a cigarette is manufactured in, or imported into, the United States, at which point it enters the flow of commerce in this country, *see* 26 U.S.C. § 5701(b), while state tobacco taxes typically are charged when cigarettes enter retail sale and thereby leave the flow of commerce, *see, e.g.,* Conn. Gen. Stat. § 12-430(8). The Reconciliation Requirement directs a Nonparticipating Manufacturer to report how many of its cigarettes entered the flow of commerce, when federal excise tax was charged, and then how many left the flow of commerce with, presumably, state taxes properly paid. We do not view it as irrational or arbitrary for a state legislature to conclude that data allowing a comparison of the quantities of a manufacturer's cigarettes entering

18

U.S. commerce with the quantities leaving U.S. commerce can reveal possible smuggling activity. A discrepancy between a manufacturer's data sets, unless explained, is a potential indicator of state tax evasion involving cigarettes diverted from the legitimate flow of commerce for eventual untaxed sale. In combatting cigarette smuggling, federal law employs a similar logic as to the use of data on quantities of cigarettes in commerce. The Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. § 375 *et seq.*, directs that reports of the quantities of cigarettes shipped into each state be reported to that state's tobacco tax administrator (as well as to localities and Indian tribes that charge tobacco taxes) for comparison with state and local records.

Grand River's argument that the Reconciliation Requirement fails rational basis review for arbitrarily affecting only Nonpartici-pating Manufacturers is not convincing. Participating Manufacturers are subject to information collection under the Agreement. *See* Master Settlement Agreement § II(jj). This causes us to conclude that limiting

19

the effect of the Reconciliation Requirement to Nonparticipating Manufacturers does not invalidate it for arbitrariness.

Nor are we persuaded by GRE's argument that Connecticut improperly collects nationwide information from a manufacturer when its interest is confined to illicit sales within its own borders. If a manufacturer's cigarettes are diverted from the stream of legitimate commerce anywhere in the United States, it is rational, and not arbitrary, for a state legislature to anticipate that the diverted cigarettes may cause harm in that state.

Finally, Grand River's argument that the Reconciliation Requirement has not been demonstrated to prevent smuggling is unavailing. Rational basis review is not a post-hoc test of the effectiveness of a legislative policy. *See Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) ("We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish." (citing *Seagram & Sons, Inc. v. Hostetter*,

384 U.S. 35, 50 (1966)). Rather, we examine whether, at enactment, there is a rational link between the harm a statute is intended to remedy and the method by which a legislature chooses to address it. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14, (1993) (requiring only "'plausible reasons'" for legislative action under rational basis review (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980))). Grand River cannot demonstrate that it is irrational or arbitrary for a state legislature to regard unexplained discrepancies between quantities of cigarettes entering, and leaving, U.S. commerce as a potential subject of investigation that could uncover illegal activity affecting that state.

Of course, there are legitimate reasons why reporting under the Reconciliation Requirement that exceeds the 2.5% threshold might not indicate smuggling activity. Among other things, the number of cigarettes reported on federal excise tax forms may conflict with the number of cigarettes reported pursuant to the PACT Act because

PACT Act filings exclude intrastate sales, cigarette inventory, and—as Grand River argues—sales within "Indian Country." But notably, the Reconciliation Requirement affords a Nonparticipating Manufacturer the opportunity to explain any discrepancies before imposing the sanction of de-listing from the Directory. Conn. Gen. Stat. § 4-28(m)(3). Even for manufacturers that routinely report a discrepancy of greater than 2.5%, the expectation that the Commissioner will scrutinize the discrepancy may encourage accurate record-keeping practices that could reduce the number of cigarettes diverted to an illicit market.

In summary, we find no error in the District Court's dismissal of Grand River's claim that the Reconciliation Requirement is constitutionally impermissible on substantive due process grounds.

C. *The Dormant Commerce Clause*

Grand River argues that the Reconciliation Requirement violates the "dormant" (or "negative") Commerce Clause, which is an implied limitation on a state's power to regulate commerce outside its

borders stemming from the grant to the federal government of the power to "regulate commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3. GRE maintains that the Reconciliation Requirement impermissibly regulates its out-of-state commercial business decisions by forcing it to choose importers and distributors that will provide it with their business records, including federal excise tax records and PACT Act reports, so that Grand River can comply with the reporting demanded by the Reconciliation Requirement.

A state law may run afoul of the dormant Commerce Clause if it "clearly discriminates against interstate commerce in favor of intrastate commerce[,] . . . if it imposes a burden on interstate commerce incommensurate with the local benefits secured" when viewed according to the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), or "if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425

F.3d 158, 168 (2d Cir. 2005) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004)). Of these three possible grounds, Grand River confines its arguments to the third, extraterritoriality. Relying on *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), GRE argues that the statute must be invalidated as impermissibly extraterritorial because its practical effect is to control conduct outside the borders of Connecticut. Specifically, Grand River contends that the "practical effect" of the Reconciliation Requirement is to require each of its U.S. importers, including those who do no business in Connecticut, to provide the State with records on the number of cigarettes on which the importers paid federal excise tax and the number of cigarettes each importer sold into interstate and intrastate commerce for each year.

Grand River thus grounds its theory of extraterritoriality in the effect Connecticut's Reconciliation Requirement has upon its importers, even though the directly regulated party is Grand River itself. The practical effect of the Reconciliation Requirement on

24

interstate commerce, being indirect as well as incidental to the purpose of the statute, is not analogous to that of the economic regulation held to violate the dormant Commerce Clause in *Healy*, the principal case Grand River cites as authority for its position. *Healy* invalidated a Connecticut statute requiring out-of-state shippers of beer to affirm that their prices for beer sold to Connecticut wholesalers, at the time of posting, were no higher than the prices at which the products were sold in bordering states. 491 U.S. at 337. The pricing decisions of out-of-state wholesalers were directly controlled by this price-regulating provision, which the Supreme Court held to have had the impermissible effect of controlling the wholesalers' commercial pricing and marketing activity that occurred outside of Connecticut. *Id.* "Moreover, the practical effect of this affirmation law, in conjunction with the many other beer-pricing and affirmation laws that have been or might be enacted throughout the country, is to create just the kind of competing and interlocking local economic regulation

that the Commerce Clause was meant to preclude." *Id.* Here, the Reconciliation Requirement does not have, and is not intended to have, a controlling effect on the cigarette sales transactions involving the importers. Its reach is to the post-sale reporting of transactions. The effect on the importers, if any, is only incidental to the purpose of the Reconciliation Requirement, which is to allow for investigation of cigarette smuggling with the potential to affect adversely the State of Connecticut. Moreover, the adoption of this or similar reporting by other states would not constitute the "competing and interlocking local economic regulation" of a kind found objectionable by the Supreme Court in *Healy*. *Id.*; *see also id.* at 336 (considering "what effect would arise if not one, but many or every, State adopted similar legislation"). To the contrary, it is akin to the very sort of regulation that we have previously permitted. *See VIZIO, Inc. v. Klee*, 886 F.3d 249, 256 (2d Cir. 2018) (holding that Connecticut's E-Waste law, which calculates fees based on national market share data, "does nothing to

26

*control* interstate commerce, but rather merely *considers* out-of-state activity in imposing in-state charges").

Grand River also cites *American Booksellers Foundation v. Dean*, 342 F.3d 96 (2d Cir. 2003), but that decision too is inapposite. In *American Booksellers Foundation*, we held that a Vermont statute prohibiting internet dissemination of sexually explicit materials harmful to minors had an extraterritorial effect prohibited by the dormant Commerce Clause. We reasoned that Vermont had projected "onto the rest of the nation" its prohibition on the dissemination of that material through the internet. 342 F.3d at 103. "Although Vermont aims to protect only Vermont minors, the rest of the nation is forced to comply with its regulation or risk prosecution." *Id.* Connecticut's Reconciliation Requirement does not seek to, and in practical effect does not, project onto the rest of the nation a scheme to prohibit cigarette sales or regulate the commercial terms of them and instead requires reporting of those sales, regardless of the terms, after the fact.

Grand River also cites, unavailingly, *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982), which, unlike the Reconciliation Requirement, involved a state statute that directly regulated interstate commerce. In *Edgar*, the Supreme Court invalidated an Illinois statute that granted state officials authority to block corporate takeovers by regulating tender offers and that applied even where all the shareholders were residents of other states. Stating that the Commerce Clause "permits only *incidental* regulation of interstate commerce by the States" and that "direct regulation is prohibited," the Supreme Court held that the Illinois statute violated the Commerce Clause because it "directly regulates and prevents, unless its terms are satisfied, interstate tender offers which in turn would generate interstate transactions."[3] 457 U.S.

---

[3] The Supreme Court concluded that the Illinois statute also was precluded by the Commerce Clause under the balancing test of *Pike* because it imposed burdens on interstate commerce that were excessive in light of the local interests of the Act in protecting resident security holders and regulating the corporate affairs of companies incorporated under Illinois law. *See Edgar v. MITE Corp.*, 457 U.S. 624, 643–46 (1982). Grand River makes no argument invoking the *Pike* balancing test.

28

at 640. While it requires reporting of interstate transactions, the Reconciliation Requirement neither regulates nor precludes them.

In summary, we conclude that the District Court correctly held that the Reconciliation Requirement is not prohibited by the dormant Commerce Clause.

*D. Supremacy Clause*

Grand River also claims that the Reconciliation Requirement violates the Supremacy Clause, U.S. CONST. art. VI, cl. 2, because the Reconciliation Requirement is preempted by the PACT Act and it is impossible for Grand River to comply with both statutes. Specifically, Grand River contends that this impossibility arises because (1) Grand River cannot reconcile its nationwide sales of cigarettes against interstate sales reported pursuant to the PACT Act, and (2) the Reconciliation Requirement uses PACT Act reports for purposes that are prohibited by federal law. According to GRE, this is a case in which "state law penalizes what federal law requires." Appellant's Br.

29

53 (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F. 3d 65, 97 (2d Cir. 2013) ("*MTBE*")).

We review a district court's application of preemption principles *de novo*. *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (per curiam) ("*SMSA*"). The doctrine of federal preemption provides that "[u]nder the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." *Id.* (internal quotation marks omitted). In *SMSA*, we described the three general types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Id.* at 104 (internal quotation marks omitted). Grand River's argument is, essentially, that the Reconciliation Requirement violates the

30

Supremacy Clause due to "impossibility" preemption, the first of two types of conflict preemption, which is where "local law conflicts with federal law such that it is impossible for a party to comply with both." *Id.* For a plaintiff to establish impossibility preemption, "it must show that federal and state laws 'directly conflict.'" *MTBE*, 725 F.3d at 99 (quoting *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 227 (1998)).

We do not find merit in plaintiff-appellant's preemption argument. As is pertinent here, the PACT Act requires reporting by "[a]ny person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce . . . or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment." 15 U.S.C. § 376(a). A party regulated thereunder must file with the tobacco tax administrator of the state into which a shipment was made (and to the administrators and law enforcement officers of local governments and Indian tribes that apply their own tobacco taxes)

a memorandum listing the recipient's name and address, the brands and quantities of cigarettes (or smokeless tobacco) shipped, and the information of the shipper acting on behalf of the delivery seller. *Id.*

Grand River argues that even if its importers file all reports required by the PACT Act, the figures Grand River submits to Connecticut's Department of Revenue Services to comply with the Reconciliation Requirement inevitably will not reconcile within the 2.5% margin. GRE explains that the PACT Act reporting does not apply, for example, to sales taking place within a single state and to sales of cigarettes distributed exclusively within Indian Country. This argument is unconvincing because a Nonparticipating Manufacturer need not achieve actual, numerical reconciliation within the 2.5% variance in order to achieve compliance with the Reconciliation Requirement; the statute affords the Nonparticipating Manufacturer the opportunity to "satisfactorily explain[] the discrepancy." Conn. Gen. Stat. § 4-28(m)(3). Grand River in fact has maintained its listing

in the Directory during the pendency of this litigation.  Therefore, we do not agree with Grand River's view that the federal and state statutes "directly conflict" or that the Reconciliation Requirement "penalizes what federal law requires."  *MTBE*, 725 F.3d at 97, 99.  Instead, the Reconciliation Requirement and the PACT Act can "stand together" as reporting requirements.  *Id.* at 102.

As a second argument under the Supremacy Clause, Grand River maintains that the Reconciliation Requirement violates the PACT Act by using PACT Act reports for impermissible purposes.  We are unconvinced by this argument as well.  PACT Act reports may be used "solely for the purposes of the enforcement of this chapter and the collection of *any* taxes owed on related sales of cigarettes and smokeless tobacco."  15 U.S.C. § 376(c) (emphasis added).  The Reconciliation Requirement uses PACT Act reporting for a purpose— the investigation of possible tax evasion involving cigarettes— expressly contemplated by the PACT Act.

*E. Grand River's Request for a Declaratory Judgment*

Grand River sought a declaratory judgment that it is in compliance with the Reconciliation Requirement in the District Court, in the event the Reconciliation Requirement is upheld as constitutional. On appeal, Grand River argues that the District Court erred in dismissing its request for a declaratory judgment as moot. We review a District Court's decision to refuse to issue a declaratory judgment for abuse of discretion. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

Grand River seeks a declaratory judgment on the ground that it has provided adequate reasons why it cannot reconcile its federal excise tax and state sales figures and, therefore, is entitled to a decision that it is in compliance with the Reconciliation Requirement. GRE currently is listed in the Directory and so has complied with the Reconciliation Requirement for the most recent year. In the future, should the State of Connecticut rule that Grand River is no longer in

compliance with the Reconciliation Requirement, Grand River might be in a position to pursue its potential administrative and judicial remedies in contesting that determination. The administrative determination of whether GRE has "satisfactorily explained" any discrepancies is for the DRS to make in the first instance for each year for which Grand River seeks listing in the Directory. It was not an abuse of discretion for the District Court to decline to make this determination.

## III. CONCLUSION

We hold that Connecticut's Reconciliation Requirement is rationally related to the State's legitimate interest in preventing evasion of state tobacco taxes and, therefore, does not violate GRE's due process rights, that any incidental burdens the Reconciliation Requirement imposes on interstate commerce do not have an impermissible extraterritorial reach inconsistent with the dormant Commerce Clause, and that the Reconciliation Requirement is not

preempted by federal law so as to violate the Supremacy Clause.  We

further hold that the District Court's decision to not issue Grand River

a declaratory judgment was a permissible exercise of its discretion.

For the foregoing reasons, we **AFFIRM** the September 27, 2018

and March 3, 2019 judgments of the District Court.